UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDONIA J. ANDERSON,

                Plaintiff,                No. 06-CV-13326-DT

vs.                                              Hon. Gerald E. Rosen

R. JAMES NICHOLSON,
Secretary, Department of Veterans Affairs,

                Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on __March 26, 2008_____

PRESENT: Honorable Gerald E. Rosen
                    United States District Judge

## I. INTRODUCTION

This Title VII race discrimination action is presently before the Court on Defendant's Fed. R. Civ. P. 56 Motion for Summary Judgment. Plaintiff has responded to Defendant's motion. Having reviewed and considered the parties' briefs and the entire record of this matter, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

1

Plaintiff Fredonia J. Anderson is an African-American employee of the Department of Veterans Affairs. Ms. Anderson resides in Belleville, Michigan and has been employed as an Agent Cashier at the Veterans Administration Health Care System (referred to herein as the "VA hospital") in Ann Arbor, Michigan since March 25, 2000. She attained a GS-6 grade on March 15, 2001.

In January 2004, a position opening was announced for a GS-6 Accounting Technician/Voucher Audit position for which Plaintiff and two other employees applied. The other employees, however, withdrew their names from consideration before any hiring decision was made, leaving Plaintiff as the only applicant. James Waller, the Supervisory Accountant at the VA, determined that he could not make a recommendation with just one applicant. Nonetheless, he proceeded to interview Plaintiff. During the interview, Waller informed Plaintiff that he could not make a recommendation based on just one candidate and that he was going to have to ask Human Resources for a second list of eligible candidates.

After Plaintiff's interview, Waller informed his superior, Karen Ruedal, that there was only one candidate for the Accounting Tech position, and that a second referral list was, therefore, needed. Ruedal concurred and made the request for a second referral list to Human Resources.

On February 6, 2004, Human Resources prepared a second Referral Listing which identified Mary Abdo, a Caucasian GS-6 Pharmacy Technician, as eligible for

2

reassignment to the GS-6 Accounting Tech position. Ms. Abdo was subsequently interviewed by Supervisor Waller. Following the interview, Waller recommended Abdo for the job. His recommendation was subsequently approved by Karen Ruedal.

Waller testified that although Plaintiff and Ms. Abdo both interviewed well, he felt that Ms. Abdo did better in the interview than Plaintiff. He explained that she gave very good responses to performance-based questions. In addition, Waller was impressed by Abdo's auditing background. The open accounting technician position was primarily a voucher audit position which entailed auditing invoices and addressing vendor inquiries concerning invoice payments. Therefore, Waller felt that it was important for the selected candidate to have auditing skills and to be familiar with fund control points, call centers and budget codes. Ms. Abdo's job as a VA Pharmacy Tech involved these skills -- she was responsible for auditing pharmacy inventory, invoicing and cost control processes. Although Plaintiff had a college degree in accounting, she had only five years experience at the VA, which included one year as a GS-4 Telephone Operator, one year as a GS-5 Teller, and three years as a GS-6 Teller. In comparison, while Ms. Abdo had only a high school diploma and post-high school course work in basic and advanced accounting principles, she had 20 years experience at the VA working as a GS-6 Pharmacy Tech and as Lead Pharmacy Tech for one year.

Waller was also testified that Plaintiff had attendance and tardiness problems and that those problems were a concern of his in evaluating Plaintiff's application for

reassignment. He also testified that there were customer/patient complaints about her rudeness towards veterans.

Upon learning that Mary Abdo had been selected for reassignment to the Accounting Tech position, Plaintiff filed an administrative EEO complaint claiming that the decision not to give her the job was motivated by race discrimination. A hearing on Plaintiff's EEO complaint was held before an Administrative Judge, and on September 30, 2005, the Administrative Judge issued his decision finding no discrimination. *See* Defendant's Ex. 4. Plaintiff appealed the decision to the EEOC's Office of Federal Operations in Washington, D.C. On April 21, 2006, the EEOC concluded that the plaintiff "failed to show by a preponderance of the evidence that she was discriminated against on the basis of race." *See* Defendant's Ex. 5.

On July 24, 2006, Plaintiff timely filed her one-count Complaint in this action claiming race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. After the close of discovery, Defendant filed the instant motion for summary judgment arguing that Plaintiff cannot establish a *prima facie* case of race discrimination under Title VII, and even if she has, she has failed to show that the VA's non-discriminatory reasons for selecting Mary Abdo over her were pretextual.

III. DISCUSSION

A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- delineate the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[1] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

---

[1] "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply the above standards in deciding Defendant's Motion for Summary Judgment in this case.

2. PLAINTIFF HAS FAILED TO MAKE OUT A *PRIMA FACIE* CLAIM OF RACE DISCRIMINATION

It is well-established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination. *See Lautermilch v. Findlay City Schools*, 314 F.3d 271, 275 (6th Cir. 2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 148, 156 (1981).

6

A Title VII plaintiff may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, *Terbovitz v. Fiscal Court*, 825 F.2d 111, 114-15 (6th Cir.1987) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22 (1985)), or by showing the existence of circumstantial evidence which creates an inference of discrimination, *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. *See Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995). Plaintiff here has presented her race discrimination claim as one of "disparate treatment" using the *McDonnell Douglas/Burdine* framework.

Under the *McDonnell Douglas* approach, an employment discrimination plaintiff establishes a *prima facie* claim by producing evidence (1) that he is a member of a protected class, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that similarly-situated non-protected employees were treated more favorably. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992). *See also, Talley v. Bravo Pitino Restaurant, Ltd., supra*, 61 F.3d at 1246*; McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824.

The parties here do not dispute that Ms. Anderson has made out the first and third elements of a *prima facie* case: Ms. Anderson is a member of a protected class (African-American) and both Mr. Waller and Ms. Ruedal conceded that she was qualified for reassignment to the GS-6 Accounting Tech position. Defendant, however, disputes that Ms. Anderson has suffered an "adverse employment action."

The Supreme Court has defined an "adverse employment action" as "a significant

change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761 (1998). Here, the position that Plaintiff was denied was a lateral reassignment to another GS-6 position. The reassignment would not have involved a change in Plaintiff's pay, salary grade, or benefits.

The Sixth Circuit has determined that "[i]n cases where the sought position is a lateral transfer, without additional material benefits or prestige, it would be improper to conclude that a denial of such a transfer would be a materially adverse action." *Mitchell v. Vanderbilt University*, 389 F.3d 177, 182 (6th Cir. 2005); *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987) (holding that reassignments without changes in pay or in schedules are not sufficient to constitute an adverse employment action in discrimination claims); *Policastro v. Northwest Airlines*, 297 F.3d 535, 539 (6th Cir.2002) ( "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions."); *see also Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2417 (2006) (holding in the context of a retaliation claim that "reassignment of job duties is not automatically actionable" and that "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all of the circumstances.'"

(quoting *Oncale v. v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 99 (1998))).

As the Sixth Circuit explained in affirming the district court's grant of summary judgment in favor of the employer in *Mitchell v. Vanderbilt*,

> While Vanderbilt at oral argument acknowledged that the position would involve some different duties, we find nothing to indicate that the appointment would have provided an increased salary, significantly changed responsibilities, a more distinguished title, or a gain in benefits. . . . And while Mitchell's mere application for the position indicates that he may have considered the appointment desirable, a plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action. *See, e.g., Policastro*, 297 F.3d at 539; *Henry v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 162 F.Supp.2d 794, 801 (S.D.Ohio 2000) (citing *Kocsis* [*v. Multi-Care Mgmt., Inc.*], 97 F.3d [876,] 886 [(6th Cir. 1996)]). Thus, because Mitchell has not presented evidence that establishes a question as to whether the denial of this appointment was materially adverse, summary judgment for Vanderbilt was proper.

389 F.3d at 182-83.

In this case, as indicated, the reassignment to a GS-6 accounting tech position did not involve a change in pay, salary grade, benefits or hours. While there are some differences between the job duties of an agent cashier and an accounting tech, Plaintiff has presented no evidence to show that these differences were material. As in *Mitchell*, at best, the evidence shows only that Plaintiff considered the accounting tech position desirable. She testified that she applied for reassignment because her job in the agent cashier's office had become routine and she "wanted to do something different." *See* Defendant's Ex. 8, p. 2.

9

In sum, because Plaintiff has failed to demonstrate that the denial of a reassignment to a GS-6 accounting tech position constituted an adverse employment action, she has failed to make out an essential element of a *prima facie* claim of discrimination.

3.     PLAINTIFF HAS FAILED TO ESTABLISH PRETEXT

Assuming *arguendo* that Plaintiff has made out a *prima facie* case, the *prima facie* case creates only a rebuttable presumption of discrimination.

Once a plaintiff establishes a *prima facie* claim, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's rejection. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56, 101 S.Ct. 1089, 1094-95 (1981); ; *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 265 (6th Cir. 1986). If the defendant offers a legitimate reason, the burden of production shifts back to the plaintiff to demonstrate that the legitimate reason offered by the defendant was not its true reason but was a pretext for discrimination. *Burdine, supra*, 450 U.S. at 253; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-508, 113 S.Ct. 2742, 2747-48 (1993); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct.2097, 2106 (2000). Defendant's "burden is one of production only, not of persuasion." *Id.*

Defendant here has articulated a legitimate non-discriminatory reason for selecting Mary Abdo over Plaintiff for reassignment to the Accounting Tech position. Defendant's proffered reason is that after evaluating Mary Abdo's and Plaintiff's education and work

10

experience, Mary Abdo was found to be better qualified for the position. The burden, therefore, shifts back to Plaintiff to establish by a preponderance of the evidence that Defendant's proffered reason is a pretext for intentional discrimination. *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997) (citing *Burdine*, 450 U.S. at 252-53, 101 S.Ct. at 1093).

"To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chem. Co*., 29 F.3d 1078, 1084 (6th Cir. 1994); *see also Gray v. Toshiba Am. Consumer Prod.*, 263 F.3d 595, 600 (6th Cir. 2001).

A showing that a proffered reason had "no basis in fact" consists of evidence establishing that the proffered reasons for the employer's decision never happened, or are factually false. *Manzer*, 29 F.3d at 1084. To make a showing that the proffered reasons "did not actually motivate the employer's conduct," the plaintiff must present evidence "which tend[s] to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.* Finally, a showing that the proffered reasons were "insufficient to motivate the employer" consists of evidence that other employees, particularly employees not in the protected class, were not treated the same way, even though they engaged in substantially identical conduct. *Manzer,* 29 F.3d at 1084.

According to the *Manzer* court, the first and third types of rebuttals -- that the

reason offered by the employer has no basis in fact or was insufficient to warrant the employer's decision -- "are direct attacks on the credibility of the employer's proffered motivation for firing the plaintiff, and if shown, provide an evidentiary basis for what the Supreme Court has termed a 'suspicion of mendacity,'" sufficient to withstand summary judgment. *Id*. As for the second *Manzer* option -- that the employer's articulated reason did not actually motivate the employer's actions -- the Sixth Circuit has held,

> If the bare bones elements of plaintiff's *prima facie* case were sufficient to make this showing, . . . the entire "burden shifting" analysis of *McDonnell Douglas* and its successors would be illusory. . . . Accordingly, we hold that, ***in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence, but must, instead, introduce additional evidence of [prohibited] discrimination.***

*Gray v. Toshiba Am. Consumer Prods.*, *supra*, 263 F.3d at 600 (quoting *Manzer*, 29 F.3d at 1084) (emphasis added).

Regardless of which rebuttal method is employed, the plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).

Plaintiff in this case challenges Defendant's stated reason that Mary Abdo was better qualified for the Accounting Tech position as pretextual.

The Supreme Court has stated that "qualifications evidence may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 126 S.Ct. 1195, 1197 (2006). In *Bender v. Hecht's Department Stores*, 455 F.3d 612, 626 (6th

Cir.2006), *cert. denied*, 127 S.Ct. 2100 (2007), the Sixth Circuit held that the probative value of qualifications evidence in terms of demonstrating pretext must be balanced against "the principles that employers are generally 'free to choose among qualified candidates,' [quoting] *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir.1987), and that '[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with,' [quoting] *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir.1996)." Thus, "[w]hether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination." *Bender*, 455 F.3d at 626. The court explained:

> In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. . . . On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. <u>In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.</u>

*Id.* at 627 (citation omitted and emphasis added).

Plaintiff here has not shown that her qualifications were "so significantly better than [Abdo's] qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id*. While Plaintiff may have had the edge with regard to

13

educational background, Mary Abdo had the better background in terms of work experience.[2]  Construed in the light most favorable to her, Plaintiff's argument at best is that she was equally or marginally better qualified than Abdo.  This is not sufficient to establish pretext under *Bender*.

Plaintiff's only other evidence of race discrimination is her testimony concerning an incident involving two other employees -- one white and one black -- who worked under James Waller's supervision.  Plaintiff testified that after the white employee accused the black employee of "trying to steal her password," Supervisor Waller had a nine-foot wall erected to separate the two employees' work stations. [Defendant's Ex. 2, pp. 9-10.]  Plaintiff alleges that the black employee was offended because Waller did not talk to her to get her side of the story before ordering the wall constructed.  This, according to Plaintiff, is evidence of race discrimination.

The fatal flaw in Plaintiff's argument, however, is that she cannot show a causal nexus between this circumstantial evidence and Waller's decision not to grant her reassignment request.  It is well-settled that a plaintiff who relies on circumstantial evidence of racial animus to show pretext must show some nexus between the circumstantial evidence and the decision to terminate him.  *See Burns v. Board of County Com'rs of Jackson County*, 330 F.3d 1275, 1284 (10th Cir. 2003) (finding insufficient evidence of racial animus on the part of plaintiff's supervisor where no nexus was shown

---

[2]  Abdo also did not have the attendance and tardiness problems that Plaintiff had nor did she have a record of customer/patient complaints.

between a comment about "damn Indians" allegedly made by plaintiff's supervisor at some unspecified point in time and the defendant's decision to fire him); *see also Wilson v. Stroh* Cos., 952 F. 2d 942, 946 (6th Cir. 1992) (finding that the plaintiff failed to make out a claim of race discrimination where he could not demonstrate a causal nexus between the decisionmaker's decision to fire him and a lower-level employee's racial animus).

The "wall" evidence relied upon by Plaintiff does not relate in any way to her request for a lateral reassignment. Nor does it involve any other reassignment decisions made by Supervisor Waller or Karen Ruedal during the relevant time period. The evidence simply does not show that in denying Plaintiff a lateral reassignment, Defendant subjected Plaintiff to disparate treatment.

Based upon the foregoing discussion, the Court finds that Plaintiff has failed to make out a legally cognizable claim of race discrimination.

## CONCLUSION

For all of the reasons set forth in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Dkt. # 9] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint be, and hereby is, DISMISSED, in its entirety, with prejudice.

Let Judgment be entered accordingly.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated: March 26, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 26, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager